UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OBA HASSAN WAT BEY, ET AL.,

                Plaintiffs,

- against -

THE CITY OF NEW YORK, ET AL.,

                Defendants.

MEMORANDUM
OPINION & ORDER

99 Civ. 3873 (LMM) (RLE)

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

Pending before this Court is defendants' motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c), precluding the deposition of Michael P. Jacobson, former Commissioner of the New York City Department of Corrections.

For the reasons that follow, the motion is **GRANTED**.

## II. BACKGROUND

Jacobson was an acting Commissioner with the Department of Corrections from January 1995 through March 1996, and Commissioner from March 1996 through December 1997. Michael P. Jacobson Aff. ("Jacobson Aff."), at ¶ 2. In 1996, the New York City Department of Corrections ("DOC") initiated an investigation into the filing of fraudulent tax documents by DOC employees. Defs.' Mem. of Law in Supp. of Mot. for Protective Order ("Defs.' Mem."), at 1. At the time of the investigations in 1996, plaintiffs were active Corrections Officers who had filed fraudulent tax documents and were also associated with the Moorish National Group. The Moorish National Group claims to be exempt from taxation, immune from income tax

withholdings, and entitled to complete tax exemptions; not subject to the jurisdiction of the federal, state or local government; and not subject to arrest.

The DOC put plaintiffs on modified duty in January 1998 in response to a police report that the Moorish National Group was suspected of being a security threat in the jails. **Defs.' Mem.**, at 1-2. In March 1998, disciplinary proceedings were brought before an administrative law judge on the tax issues. **Id.**, at 2. Plaintiffs were found guilty of a number of charges, including various forms of tax evasion, and were recommended on November 30, 1998 for termination. **Id**.

### III.   DISCUSSION

**A.   Standard of Review**

According to Rule 26(b) of the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." FED. R. CIV. P. 26(b)(1). Generally, a party to a matter is allowed to "take the testimony of any person . . . by deposition upon oral examination . . . " FED. R. CIV. P. 30(a). However, Rule 26(c) authorizes courts, for good cause, to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . that the disclosure or discovery not be had . . . " FED. R. CIV. P. 26(c).

In spite of the generally broad approach to discovery, when a party seeks to depose a high level government official "special considerations arise." **Pisani v. Westchester County Health Care Corp.**, 2007 WL 107747, *2 (S.D.N.Y. Jan. 16, 2007). Such depositions "are permitted upon a showing that: (1) the deposition is necessary in order to obtain relevant information that cannot be obtained from any other source and (2) the deposition would not significantly interfere

with the ability of the official to perform his governmental duties." **Marisol A. v. Giuliani**, 1998 WL 132810, *2 (S.D.N.Y. Mar. 23, 1998) (*internal citations omitted*).  A deposition will be considered necessary under the first prong when "the official's testimony will likely lead to the discovery of admissible evidence" and the official has "unique personal knowledge that cannot be obtained elsewhere."  **Id**. at *3 (*internal quotations omitted*).  While this limited immunity is traditionally reserved for current high level officials, it has been applied to requests to depose former high level officials.  *See, e.g.,* **Univ. Calvary Church v. City of New York**, 1999 WL 350852, *1-2, 5 (S.D.N.Y. June 2, 1999).  Previous opinions have categorized former Commissioners of the New York City Department of Corrections (Commissioner) as high level officials, and Jacobson will be considered one for purposes of this motion.  **Id**.

### B.   Jacobson's Knowledge of Investigation

To satisfy their burden that Jacobson has "unique personal knowledge," plaintiffs claim that he was aware of the investigation of plaintiffs, and did nothing to stop or correct allegedly discriminatory actions against plaintiffs.  Decl. of Irene Thomas in Opp'n to Defs.' Mot. for Protective Order ("Thomas Decl."), at ¶ 3.  This assertion is meritless.  Jacobson was not directly involved in the investigation of plaintiffs, or disciplinary actions taken against them.  There is no showing that he has personal knowledge of the way in which the investigation and subsequent actions were carried out.  Moreover, official disciplinary actions against plaintiffs did not occur during Jacobson's tenure as Commissioner.  Jacobson Aff., at ¶ 4; Defs.' Mem., at 1-3.  Plaintiffs argue, however, that he was aware of practices in which plaintiffs were unlawfully or discriminatorily targeted during the initial investigations beginning in 1996.  Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Protective Order for Michael P. Jacobson ("Pls.' Mem."), at 5.  In

3

contrast, Jacobson avers, that he and his staff did not conduct the investigation of plaintiffs and did not play a role in the January 1998 modification of plaintiffs' job duties. Jacobson Aff., at ¶ 3-4.

Plaintiffs claim that Jacobson's affidavit statements contradict deposition testimony by Michael Caruso, Inspector General for the DOC, that he spoke with Jacobson about the investigations. Pls.' Mem., at 5; Thomas Decl., at ¶ 5. The Court disagrees. Statements made by Caruso in his August 16, 2007 deposition are at best inconclusive. For example, plaintiffs' attorney asked Caruso whether he had told "Mr. Jacobson about the fact that the NYPD bulletin played a part in your decision to recommend plaintiffs be summarily suspended?" Michael Caruso Dep., August 16, 2007 ("Caruso Dep.") at 132, lines 20-23. Caruso answered "I believe I did." **Id**., line 24. Similarly, when, plaintiffs' attorney asked Caruso if he had had conversations concerning the investigation with the Commissioner from 1996 to 1999, Caruso answered "[w]ell, it is two different Commissioners around that time frame. I believe I did let them know the arrest numbers when we were getting closer." **Id**. at 146, lines 2-8. When asked if Commissioner Kerik was briefed on the investigation, Caruso again answered uncertainly that he knew the DOC was informed of the investigation and that he "believ[ed] it was Jacobson. So if Jacobson knew he would have probably told Kerik." **Id**. at 175, lines 16-18.

Caruso's uncertain statements about his communications with Jacobson do not contradict Jacobson's affidavit statement that he was not involved in the investigation of plaintiffs. Caruso's statements confirm Jacobson's periphery role in and knowledge of the investigation rather than contradict it.

Plaintiffs have access to other officials with more unique and personal knowledge of

4

proceedings against plaintiffs, thus making a deposition of Jacobson unnecessary. *See*, **Oba Hassan Wat Bey, et al. v. The City of New York, et al.**, 2007 WL 1893723 (S.D.N.Y.) (denying the City's motion for a protective order of Michael Caruso and Commissioner Kuriansky).

## IV.   CONCLUSION

For the above reasons, defendants' motion for a protective order pursuant to Federal Civil Procedure Rule 26(c) to preclude the deposition of Michael P. Jacobson, former Commissioner of the Department of Correction, is **GRANTED**.

**SO ORDERED this 15th day of October 2007**
**New York, New York**

_____
**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

5